IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| C & K TRUCKING LLC et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-1104-K |
| | § | |
| ARDENT MILLS LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ardent Mills LLC's Motion to Dismiss Plaintiffs' Original Complaint (the "Motion to Dismiss") (Doc. No. 10). After careful consideration of the motion, the response, the reply, the relevant portions of the record, and the applicable law, the Court **DENIES** the Motion to Dismiss as to Plaintiff C & K Trucking LLC ("Plaintiff" or "C & K Trucking")'s claims against Defendant Ardent Mills LLC ("Defendant" or "Ardent Mills") for violation of 42 U.S.C. § 1981 and breach of contract because Plaintiff sufficiently pleads both claims. The Court **GRANTS** the Motion to Dismiss the promissory estoppel claim and tortious interference with existing and prospective business relations claims. However, the Court also **GRANTS** Plaintiff leave to file an amended complaint as to its claims against Defendant in accordance with the foregoing. The Court notes that the parties filed a Stipulated Dismissal of Defamation Claims brought by Plaintiff and Kenyon

1

Collins in the Complaint (Doc. No. 29). Therefore, Kenyon Collins has no remaining claims against Defendant in this action.

## I. Factual and Procedural Background

Plaintiff C & K Trucking is a trucking company that was hired to transport goods for Defendant Ardent Mills. Kenyon Collins is the owner of C & K Trucking and, relevantly, is an African American. The relationship between Defendant and Plaintiff was governed by the Motor Transportation Agreement (the "Agreement") that retained Plaintiff for trucking services on an indefinite basis until the Agreement was terminated by either party with a 60-day notice. Defendant terminated the Agreement without notice.

Along with Plaintiff's allegation that Defendant breached their Agreement, Plaintiff contends that Defendant represented that Plaintiff would have almost all the trucking business out of Defendant's Sherman facility. Plaintiff contends that it relied on such representations and purchased four trailers and one truck, hired additional employees and contractors, and bought commercial property adjacent to the Sherman facility to store its trucking fleet. Defendant terminated the Agreement nine months later.

Plaintiff further complains that Defendant unlawfully discriminated against it and its mostly minority drivers based on race. Plaintiff alleges that Defendant required Plaintiff to unload trucks in the back of Defendant's facilities while non-minority trucking companies were permitted to unload in the front; cited Plaintiff for violations

of Ardent Mills' policies while similar non-minority violators were not penalized; paid

Plaintiff less than non-minority companies; and terminated Plaintiff in favor of a non-

minority company.

Plaintiff also details an altercation between Kenyon Collins, owner of C & K

Trucking, and another driver for Ardent Mills in which the other driver allegedly spit

in Collins's face and screamed racial slurs at him. Collins allegedly hit the other driver.

Plaintiff asserts that Defendant told third parties about this altercation and left out key

details, and that after termination of the parties' agreement Defendant also made false

representations to third parties to convince them to cease doing business with Plaintiff.

Based up on these factual allegations, Plaintiff brought this action against

Defendant for violations under 42 U.S.C. § 1981, breach of contract, promissory

estoppel, defamation, and tortious interference with existing and prospective business

relations. Collins, in his individual capacity, also brought a defamation claim against

Defendant. The parties later filed a Stipulation of Dismissal of Defamation Claims,

agreeing to dismiss the defamation claims. Doc. No. 29. As such, Collins no longer has

any live claims against Defendant in this action.

Defendant moves to dismiss all claims under Federal Rule of Civil Procedure

12(b)(6). In its response, Plaintiff requests leave to amend the Complaint.

## II. Standard of Review

In considering a Rule 12(b)(6) motion, a court must determine whether the

plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV.

P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.* This pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned [] accusation . . . that is devoid of 'further factual'" support. *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id.* at 570.

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit also allows the district court to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III. Analysis

Taking the allegations in the Complaint as true, the Court finds that Plaintiff has sufficiently stated a federal claim against Defendant under 42 U.S.C. § 1981 and a state law claim for breach of contract. With respect to these claims, Defendant's Motion to Dismiss is **denied**. With respect to the promissory estoppel claim and tortious interference with existing and prospective business relations claims, the Court **grants** Defendant's Motion to Dismiss. However, the Court **grants** Plaintiff leave to amend in accordance with the analysis below. The Court addresses each claim in turn as follows.

### A. 42 U.S.C. § 1981

Defendant argues that Plaintiff has insufficiently pled its claim under 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the

5

making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). "To prevail under section 1981, the plaintiff must prove a *prima facie* case of intentional discrimination." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). Such discriminatory motive may be demonstrated by direct evidence, or by circumstantial evidence. *Body by Cook, Inc.*, 869 F.3d at 386. The Supreme Court recently clarified that a plaintiff must plead and ultimately prove that "but-for" race, it would not have suffered the loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

To establish a § 1981 claim for contractual discrimination, Plaintiff must allege that (1) it is a member of a racial minority; (2) Defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017).

Here, Plaintiff adequately pleads the first element by alleging that "C & K Trucking is a minority owned trucking business owned and operated by Collins. Collins and his father, who are African American, started the company . . . ." Compl. ¶ 9. Plaintiff also adequately pleads the third element as the parties' relationship centers on the making and enforcing of a contract—the Motor Transportation Agreement with Ardent Mills. *Id.* ¶ 14.

Whether Plaintiff successfully pleads the second element, discriminatory intent, is a closer question. While "naked allegations" of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be demonstrated by circumstantial evidence. *Body by Cook, Inc.*, 869 F.3d at 386 (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)) (internal citation omitted). "An allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim'" *Id.* (citing *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished)).

Plaintiff alleges that it "began noticing that it and its drivers, almost all of whom were also minorities, were treated differently than other non-minority owned truckers driving for Ardent Mills." Compl. ¶¶ 15, 21. Plaintiff further alleges it was (1) required to unload trucks in the back of Defendant's facilities while non-minority trucking companies were permitted to unload in the front; (2) cited for violations of Ardent Mills' policies while similar non-minority violators were not; (3) paid less than non-minority companies; and (4) terminated in favor of a non-minority company. *Id.* ¶¶ 16, 34, 36. Plaintiff argues that circumstantial evidence of disparate treatment in these situations is sufficient to demonstrate discriminatory motive. The Court agrees. Because an allegation that similarly situated non-minorities received better treatment "create[s] the necessary inference and sets the predicate for establishing a section 1981 claim," Plaintiff alleges enough circumstantial evidence to make a plausible inference

that racial discrimination occurred. *See Body by Cook, Inc.*, 869 F.3d at 386. Therefore, Plaintiff adequately pleads the § 1981 claim, and the Court **denies** the Motion to Dismiss this claim.

### B. Breach of Contract

Defendant argues that Plaintiff has insufficiently pled its breach of contract claim. The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)). "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Texas courts "must . . . attempt to give effect to all contract provisions so that none will be rendered meaningless." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

Defendant only challenges the fourth element for the breach of contract claim. Plaintiff argues that Defendant breached the Agreement by terminating without giving the required 60-day notice. Compl. ¶ 30–31, 39–41. Defendant contends that despite any breach, Plaintiff was not injured because Defendant was not obligated under the Agreement to provide freight to Plaintiff at any point. Mot. to Dismiss at 6. While section 16 of the Agreement states that Defendant is not obligated to provide Plaintiff

freight to haul at any certain point during the Agreement, Defendant also agreed to the notice provision in section 10(a). *Id.* The Court must give effect to all contract provisions and not render the notice provision meaningless, regardless of how much damage was actually incurred. *Kelley-Coppedge, Inc.*, 980 S.W.2d at 464. Because Plaintiff alleges that the breach proximately caused damages and at minimum could receive nominal damages, the Court **denies** the Motion to Dismiss this claim.

### C. Promissory Estoppel

Defendant contends that Plaintiff has no separate cause of action for promissory estoppel. To establish promissory estoppel under Texas law, a plaintiff must establish: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee. *See Metropolitan Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584 (5th Cir. 1998) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Promissory estoppel is not available where there is a legally valid contract between the parties. *Jhaver v. Zapata OffShore Co.*, 903 F.2d 381, 385 n.11 (5th Cir. 1990).

Here, Defendant allegedly promised to engage Plaintiff to run virtually all the delivery routes from Defendant's Sherman facility. Compl. ¶ 26. Defendant supposedly represented that Plaintiff "could expect to do 90% of the business out of [Defendant's] Sherman facility . . . [and] that [Defendant] was not looking for or planning to retain any other truckers for the Sherman facility." *Id.* Plaintiff argues that "[b]ased on these promises by [Defendant], C & K Trucking purchased four additional trailers and one

9

additional truck, and hired additional employees and contractors to run these increased loads . . . [which cost] more than $300,000 in extra annual expense." *Id.* ¶ 28.  Plaintiff also "purchased commercial property directly adjacent to the [] Sherman facility . . . for its trucking fleet." *Id.*  Defendant terminated the contract nine months later. *Id.* ¶ 31.   Defendant's alleged promise about the longevity and exclusivity of the Sherman facility business falls within the scope of the parties' Agre that retained Plaintiff for trucking services on an indefinite basis until the contract was terminated by either party. *Id.* ¶ 18.

Plaintiff's promissory estoppel claim must be dismissed because the parties' Agreement covers the alleged promise, and Plaintiff does not assert that this claim rests independent of the Agreement. *See Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1002–03 (S.D. Tex. 2011). Plaintiff also does not plead promissory estoppel in the alternative to the breach of contract claim. For these reasons, the Court **grants** the Motion to Dismiss the promissory estoppel claim.

**D. Tortious Interference with Existing and Prospective Business Relations**

Defendant seeks dismissal of Plaintiff's claim for tortious interference with existing and prospective business relations. Plaintiff asserts that Defendant intentionally interfered with existing and prospective customers by making false statements about it—depending solely on the factual allegations set forth in the defamation claims that were dismissed in the Stipulation of Dismissal of Defamation Claim (Doc. No. 29).

10

There are two instances of alleged defamation upon which Plaintiff bases its claims for tortious interference of existing prospective business relations. The first instance of alleged defamatory statements concerns an altercation in November 2016 between Kenyon Collins and another driver at Defendant's Saginaw facility. Compl. ¶ 17.  The altercation supposedly resulted in Collins hitting the driver after the driver provoked Collins by spitting on him and screaming racial slurs. *Id.* Plaintiff alleges that Defendant "notified third parties of the incident, leaving out details of the white driver's horrific behavior entirely and only pointing out Collins' actions and the reprimand directed at him and C & K Trucking." *Id.* ¶ 19. Plaintiff asserts that such commentary caused it to "lose at least two other customers, Cargill and Attebury Grain, at a loss of hundreds of thousands of dollars in revenue." *Id.*

The second instance of alleged defamatory statements concerns Plaintiff's termination. Plaintiff alleges "Ardent Mills reached out to third parties, namely Gavilon and Nathan Segal, made false representations regarding Collins and C & K Trucking, and instructed them to likewise cease giving C & K Trucking any trucking routes." *Id.* ¶ 33.

As a preliminary matter, tortious interference is subject to at least a two-year statute of limitations, and defamation is subject to a one-year statute of limitations. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE § 16.002(a) (defamation); *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) (tortious interference). "[T]he Fifth Circuit

and several Texas courts of appeals have held that, when the sole basis for a tortious interference claim is defamatory statements, the one-year statute of limitations for defamation applies." *Id.* The Court **dismisses** the tortious interference claims to the extent that they depend on time-barred defamatory statements stemming from the November 2016 altercation because this action as not filed until May 2020. Plaintiff weakly contends that the Court cannot conclude a defamation claim is time barred because the alleged defamatory statements *could* have occurred within the last year even though the altercation happened in November 2016. If Plaintiff's discovery of this alleged defamation happened within the statute of limitations, Plaintiff should have stated the date that the alleged statements occurred instead of making a last-ditch-effort argument.

Plaintiff lumps together its claims for tortious interference of existing and prospective business relations. "Texas law clearly distinguishes between tortious interference with an *existing* contractual or business relationship and tortious interference with a *prospective* contractual or business relationship." *Tubbs v. Nicol*, 675 F. App'x 437, 440 (5th Cir. 2017). Notably, existing contracts are not a proper basis for a claim of tortious interference with prospective business relations. *See I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017). The Court examines the claims separately as follows.

### 1. Existing Business Relations

Under Texas law, a party claiming tortious interference with existing business relations must show: "(1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Unicorn Glob., Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 547 (N.D. Tex. 2020) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)).

Defendant contends that Plaintiff insufficiently pled its claim for tortious interference with existing business relationships, and the Court agrees. Plaintiff does not plead that a valid contract exists between it and any person or entity named in the Complaint. Compl. ¶¶ 19, 33. Rather, Plaintiff simply states (1) that "Ardent Mills notified third parties of the [November 2016] incident" which "led C & K Trucking to lose at least two other customers, Cargill and Attebury Grain", and (2) "Ardent Mills reach out to third parties, namely Gavilon and Nathan Segal". Compl. ¶¶ 19, 33. The absence of an allegation of an existing contract alone causes this claim to fail.

Had Plaintiff succeeded on the first element, its claim would still fail on the intent element. To establish intent, "the plaintiff must show either that the interfering party had actual knowledge of the existence of the contract and of the plaintiff's interest in it or that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract and the plaintiff's interest in it." *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 656 (Tex. App.—

13

Corpus Christi 1991, writ denied) (citations omitted). Other than stating the words "willfully and intentionally," Plaintiff did not allege facts supporting that Defendant had intent to interfere with any contracts or that Defendant had actual knowledge of any contracts. Intent required for this claim is not just an intent to commit the acts alleged. Absent the required factual allegations that contractual interference was "willful and intentional," this claim fails.

Plaintiff also fails to sufficiently plead facts showing actual damage or loss. Plaintiff only states conclusory allegations of loss and makes no allegation as to damage or loss resulting from the statements in Paragraph 33. Plaintiff merely makes a formulaic recitation of the elements. *See Twombly*, 550 U.S. at 555 ("[A] plaintiffs obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do".). While Plaintiff *does* state that it lost "hundreds of thousands of dollars in revenue" due to the alleged November 2016 statements, any claim based on the November 2016 statements is barred by the one-year statute of limitations to the extent previously stated. *See Nath*, 446 S.W.3d at 370 (Tex. 2014) (citing *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146–47 (5th Cir. 2007)).

For these reasons, the Court finds that Plaintiff did not adequately state a claim for tortious interference with existing business relations, and the Court **grants** the Motion to Dismiss this claim. However, the Court will afford Plaintiff an opportunity to remedy these deficiencies by amending its pleading.

### 2. Prospective Business Relations

Plaintiff also fails to sufficiently state a claim for tortious interference of prospective business relations. To establish a claim for tortious interference with prospective business relations, the plaintiff must establish that: "(1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an independently tortious or wrongful act that prevented the relationship from occurring, with the purpose of harming the plaintiff; and (3) actual harm or damage resulted from the defendant's interference." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 725 (Tex. 2011); *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 702–04 (W.D. Tex. 2013).

Here, Plaintiff fails to show more than speculation or bare possibility that it would have entered a future business relationship with a third party. *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998, at *9 (N.D. Tex. June 26, 2017).  Plaintiff simply alleges that "upon information and belief, C & K Trucking would have entered into additional business relationships with third parties." Compl. ¶ 55. This does not show more than a bare possibility of future business relationships.

Plaintiff also fails to allege that Defendant had actual knowledge of prospective contractual relationships. Absent actual knowledge of a prospective contract or business relations, interference cannot be intentional. *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29,

2016), *modified on reconsideration,* No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017).

Further, Plaintiff does not allege an actionable underlying tort or wrongful conduct. "[T]o recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (2001). Plaintiff alleges defamation as the underlying tort; however, Plaintiff fails to state an actionable defamation claim, and the parties even stipulated dismissal of the original defamation claim.

To establish a cause of action for defamation under Texas law, Plaintiffs must show Defendant: "(1) published a statement, (2) that was defamatory as to [Plaintiffs], (3) 'while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement.'" *Hill v. Anderson*, 420 F. App'x 427, 434 (5th Cir. 2011) (quoting *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). "Slander is defamation without legal excuse, published orally." *Melgarejo v. 24 Hour Prof'l Janitorial Servs.*, No. 3:07-CV-1847-B, 2008 WL 3342705, at *2 (N.D. Tex. Aug.7, 2008) (Boyle, J.) (citing 50 Tex. Jur. 3d *Libel and Slander* § 4 (2008)). Defamation claims "must specifically state the time and place of the publication," as well as the alleged defamatory statement and the speaker. *Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998); *Ameen v. Merck & Co.*, 226 F.

16

App'x 363, 370 (5th Cir. 2007). "[P]laintiff must plead and prove damages, unless the defamatory statements are defamatory per se." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

As previously discussed, a defamation claim based on the November 2016 incident is time barred by the one-year statute of limitations and not actionable as the underlying tort to the extent previously discussed. Even so, Plaintiff fails to adequately allege a defamation claim based on November 2016 incident or the post-termination incident (i.e., "Ardent Mills reach[ing] out to third parties, namely Gavilon and Nathan Segal, ma[king] false representations regarding Collins and C & K Trucking, and instruct[ing] them to likewise cease giving C & K Trucking any tricking routes . . . ." Comp. ¶ 33). While Plaintiff names one individual listener, Plaintiff fails to identify with sufficient particularity the alleged defamatory statements, identify the speaker, and state the time and place of the alleged publication. Further, Plaintiff does not state any resulting harm from the post-termination instance of alleged defamation, and the generalized statement that Plaintiff was "damaged in an amount in excess of the minimum jurisdictional limits" does not sufficiently plead the damages element. Compl. ¶ 52; *In re Lipsky*, 460 S.W.3d at 593. Thus, Plaintiff fails to state an actionable, underlying tort to satisfy the second element of the claim for tortious interference with prospective business relations.

Because the claim for tortious interference with prospective business relations depends on the exact same factual allegations as the underlying defamation claim, the

17

same reasoning applies with respect to damages. Plaintiff fails to show an actual loss suffered that proximately caused by tortious interference. Merely stating that Defendant "caused C & K to suffer injury" and was "damaged in an amount in excess of the minimum jurisdictional limits", without detailing facts, is insufficient. Compl. ¶ 54–56.

For all these reasons, Plaintiff fails to state a claim for tortious interference with prospective business relationships. The Court **grants** the Motion to Dismiss and dismisses the claim. However, to the extent the claims are not barred by the one-year statute of limitations, the Court **grants** Plaintiff leave to amend.

## IV. Leave to Amend

In the response to the Motion to Dismiss, Plaintiff seeks, in the alternative, leave to amend the Complaint should the Court find any deficiencies. The Court is "entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of amendment.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). This would be Plaintiff's first time to amend in an attempt to cure the deficiencies identified by the Court. There is no evidence of undue delay as this case has been pending only seven months, or of bad faith or dilatory motive. The Court does not believe an amended complaint would

be futile. The Court **grants** Plaintiff leave to file an amended complaint **within thirty (30) days from the date of this Memorandum Opinion and Order**. If Plaintiff fails to amend the Complaint, <u>Plaintiff's claims for promissory estoppel and tortious interference with existing and prospective business relations will be dismissed without prejudice and without further notice</u>.

## V. Conclusion

The Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss in accordance with the foregoing.  However, the Court also **GRANTS** Plaintiff leave to amend its Complaint as previously explained. Should Plaintiff fail to file its amended complaint <u>within thirty (30) days from the date of this Memorandum Opinion and Order, Plaintiff's claims for promissory estoppel and tortious interference with existing and prospective business relations will be dismissed without prejudice and without further notice.</u>

**SO ORDERED.**

Signed on January 20th, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE